## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                  No.  CR 01-0829 MV

PHILLIP ARCHULETA

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion for Judgment of Acquittal*, made on April 18, 2006, at the close of the government's evidence during trial for this matter.  The Court, having considered arguments, relevant law and being otherwise fully informed, granted, before the close of trial, Defendant's Motion for Judgment of Acquittal as to Count IV of the Superseding Indictment.  The Court now sets forth the basis for its ruling in this Memorandum Opinion.

## BACKGROUND

On June 13, 2001, Defendant was arrested for his involvement in the sale of approximately four net pounds of methamphetamine to an undercover narcotics agent.  Ronnie Enriquez was arrested at the same time for his role in the sale of methamphetamine.  The events leading up to the arrest began on June 4, 2001, when an undercover narcotics agent contacted Mr. Enriquez for the purpose of purchasing one pound of methamphetamine.[1]  Mr. Enriquez agreed to sell the agent the methamphetamine and, soon thereafter, he was placed under surveillance.

---

[1]Mr. Enriquez had previously been identified as person participating in illegal drug trafficking.

Subsequently, Mr. Enriquez contacted the undercover agent and arranged to meet him at a

Chinese restaurant.  En route to the restaurant, Mr. Enriquez met Defendant in a commercial

parking lot.  They then proceeded, in Defendant's car, to the Chinese restaurant where the drug

transaction was to occur.  Once there, Mr. Enriquez entered the undercover agent's vehicle and

rode with him to a nearby supermarket parking lot where the drug sale was consummated.  At the

completion of the sale, Mr. Enriquez returned to Defendant's vehicle and the two drove away.

On June 12, 2001, the undercover agent contacted Mr. Enriquez again for the purpose of

purchasing two pounds of methamphetamine.  Mr. Enriquez told the agent he would not be

available to sell the methamphetamine, but he could send Defendant, instead.  The agent

negotiated with Mr. Enriquez and finally agreed on the terms of the sale and agreed that

Defendant would be the one to supply the drugs to the agent.

The next day, Defendant arrived to make the drug sale, at the agreed upon location.

Defendant made contact with the undercover agent, who he thought was purchasing the drugs.

Initially, Defendant tried to get the agent to come to his car, but the agent successfully prevailed

upon Defendant to come to the agent's car.  Another officer was in the car with the agent.  Once

inside the agent's car, Defendant placed two packages, each weighing about one pound, of

methamphetamine on the center console of the vehicle.  The arrest signal was given, and

Defendant was arrested inside the agent's vehicle.  A post-arrest search of Defendant's car

revealed another pound of methamphetamine and a .380 caliber semi-automatic pistol in the

console.

On April 17, 2006, Defendant went to trial on two Counts of his superseding indictment,

filed September 27, 2005, which charged Defendant with possession with intent to distribute more

than fifty grams of methamphetamine and carrying a firearm during and in relation to a drug

trafficking crime, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(a), and 18 U.S.C. § 924(c)(1)(A).[2]

At the close of the government's evidence, the Defendant made a motion for a judgment of

acquittal as to the count of possession of a firearm during and in relation to a drug trafficking

offense.  The Court granted Defendant's motion as to that count, and the jury went on to find

Defendant guilty of the remaining count.

## DISCUSSION

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, if evidence is insufficient

to sustain a conviction of an offense or offenses, the Court shall order the entry of judgment of

acquittal either on motion by the Defendant or on its own motion, after the evidence of either side

has been closed.  Fed. R. Crim. P. 29.  When considering a motion for judgment, the Court "must

determine whether 'viewing the evidence in the light most favorable to the government, any

rational trier of fact could have found the defendant guilty of the crime beyond a reasonable

doubt.'"  *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quoting *United States v.

Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)).  Specifically, the Court must determine "whether

'taking the evidence—both direct and circumstantial, together with the reasonable inferences to

be drawn therefrom—in the light most favorable to the government, a reasonable jury could find

the defendant guilty beyond a reasonable doubt.'"  *United States v. Dashney*, 117 F.3d 1197,

1202 (10th Cir. 1997) (quoting *United States v. Urena*, 27 F.3d 1487, 1489 (10th Cir. 1994)); *see*

---

[2]Two additional counts were also charged in the superseding Indictment; however, they were dismissed before trial.

*also United States v. Jaynes*, 75 F.3d 1493, 1498 (10th Cir. 1996).  Moreover, "The evidence

necessary to support a verdict need not conclusively exclude every other reasonable hypothesis

and need not negate all possibilities except guilt."  *United States v. Jaynes*, 75 F.3d 1493, 1498

(10th Cir. 1996).

In the instant case, the government charged Defendant with carrying a firearm during and

in relation to a drug trafficking crime, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(a), and 18

U.S.C. § 924(c)(1)(A).  "In order to establish a violation of § 924(c), the Government must

prove: (1) the Defendants committed the underlying [offense]; (2) the Defendants 'carried' a

firearm; and (3) the carrying of the firearm was 'during and in relation to' the [offense].  *United*

*States v. Shuler*, 181 F.3d 1188, 1189 (10th Cir. 1999).

"The 'during and in relation to' standard requires the government to prove a direct nexus

between the defendant's carrying of a firearm and the underlying drug crime."  *United States v.*

*Brown*, 400 F.3d 1242, 1249 (10th Cir. 2005).  "To establish this nexus, [there must be] evidence

that the defendant intended the firearm to be available for use in the offense."  *Id*.

The government may not argue that a nexus is presumed between a firearm and a drug

trafficking offense simply because an individual with ready access to a firearm is involved in such

an offense.  This Court recognizes that the Tenth Circuit has stated that it may "presume a nexus

between a firearm and a drug trafficking offense when an individual with ready access to a firearm

commits such an offense"  *United States v. McKissick*, 204 F.3d 1282, 1293 (10th Cir. 2000).

However, the Tenth Circuit has also made clear that this presumption is a tool to be

employed solely by the appeals court.  *United States v. Baker*, 30 F.3d 1278, 1280 n. 1 (10th

Cir.1994)(en banc).  That is, once the trial court or jury has determined that there is a nexus

between the firearm and the drug trafficking offense, the appellate court may then presume that this nexus did in fact exist if the defendant had ready access to a firearm while involved in an offense.  The Tenth Circuit has made clear that this presumption, applied at the appellate level, "in no way changes the government's burden at trial to prove every element of a § 924(c)(1) offense." *Id.*

In other words, the government still bears the burden of establishing a "nexus" between the firearm and a drug trafficking offense.  Case law does not permit the finder of fact to presume that a nexus exists, simply because an individual with ready access to a firearm is involved in a drug trafficking offense.  In fact, if this Court were to hold that proof that the defendant "carried" a firearm automatically satisfied the other element that requires said firearm to have been carried "during and in relation to" the drug trafficking offense, the "during and in relation to" requirement would be relegated to mere surplusage.  The United States Supreme Court has cautioned  that "Judges should hesitate to treat as surplusage statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense." *Bailey v. United States*, 516 U.S. 137, 145 (1995) (internal citations omitted).  Rather, statutory language must be considered in the context of the rest of the statute.  *Bailey v. United States*, 516 U.S. 137, 145 (1995).  Specifically, section 924(c)(1) must be read "with the assumption that Congress intended each of its terms to have meaning."  *Bailey v. United States*, 516 U.S. 137, 145 (1995).  This Court reads the statute to mean that a court may find that a defendant "carried" a firearm without automatically having to find that the firearm was carried "during and in relation to" the offense charged.

The government failed, in this case, to present any evidence that the jury may have relied

on to find the necessary "nexus" between the firearm possessed by Defendant and the drug

trafficking offense.  The government produced no evidence that indicated that Defendant intended

the firearm to be available for use in the offense.  The government did provide testimony that a

firearm was in the vehicle that Defendant drove to the scene of the drug transaction.  However, as

stated above, a nexus is not presumed between a firearm and a drug trafficking offense simply

because an individual with ready access to a firearm is involved in such an offense; rather, the

government must provide evidence of something more.  In fact, the other evidence presented by

the government on this issue, rather than supporting the government's argument, cuts against the

government's argument.

Specifically, immediately following his arrest, Defendant provided law enforcement with

information related to the drug transaction.  A law enforcement officer testifying at trial described

Defendant as being very cooperative.  Defendant told the agents about the methamphetamine in

the car; he told the agents what he intended to do with the methamphetamine in the car; he told

the agents the name of the person who provided the methamphetamine to him; he told the agents

where he picked up the drugs; he told the agents information about other drug transactions in

which he was involved; and he told the agents how much he paid for the drugs he received.

Defendant made all of these admissions; however, he did not state that the firearm in the car was

for use during the drug transaction.  Rather, he explained that he had the firearm to protect

himself from being carjacked, because he had very expensive gold rims on his car.[3]  Moreover, the

government's evidence showed that at the time of the sale, Defendant left the firearm in his car.

---

[3]A post-arrest search of Defendant's wallet revealed a receipt for $3000.00 spent on tires
and rims.

Other than the fact that Defendant had a firearm in his car at the time of the offense, the government did not offer a scintilla of evidence that the jury could rely on to conclude that Defendant intended to use the firearm during the commission of the drug offense.

Therefore, reviewing the evidence in the light most favorable to the government, this Court concludes that no rational trier of fact could have found the Defendant guilty of the crime beyond a reasonable doubt.

## CONCLUSION

At Defendant's trial on April 18, 2006, the Court granted Defendant's Motion for Judgment as to Count IV of the superseding indictment.  For the foregoing reasons, and the reasons stated in open court, a direct judgment of acquittal was required in this case.

**DATED** this 5th day of June, 2006.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for the United States:
Elaine Y. Ramirez

Attorney for Defendant:
Billy R. Blackburn